1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                 **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11  ROYALTON McCAMEY,                        No. 2:10-CV-2553-KJM-CMK-P

12             Plaintiff,

13      vs.                                  <u>FINDINGS AND RECOMMENDATIONS</u>

14  FURMER, et al.,

15             Defendants.

16  _____/

17             Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to

18  42 U.S.C. § 1983.   Pending before the court is defendants' motion for summary judgment (Doc.

19  42).

20

21                              **I.  BACKGROUND**

22      A.    <u>**Plaintiff's Allegations**</u>

23             Plaintiff claims:

24             While in custody in the Yolo County Jail, I showed Dr. Furmer. . ., Dr.
               Douglas and nurse practitioner Ms. Lee my recent MRI results.  Dr.
25             Douglas said and I quote "You do need surgery, but it doesn't say when."
               Dr. Furmer said the sheriff dept. doesn't want to pay for my surgery.
26             Nurse practitioner Ms. Lee denied me the adequate medication that was

1        just prescribed to me by my doctor at the Dixon Family Practice, Dr. Xu.
         Dr. Xu had just had me in his office, looked at my MRI and said I need
2        Vicodin to cure me of the kind of pain my injuries would give.  Also, Dr.
         Jennifer Orland San Francisco General Hospital prescribed me Tylenol
3        Codien #4 yet nurse practitioner Ms. Lee wouldn't allow me those meds.
         She insisted that I take the inadequate pain medication they were
4        prescribing in the jail. . . .

5   Plaintiff then describes injuries to his shoulder, knee, and finger.  He continues as follows:

6        . . .These medical professionals didn't even put a splint on my finger, nor
         did they provide me with a walking apparatus or a shoulder sling for my
7        shoulder.  Being denied adequate medication caused pain and suffering,
         emotional stress that caused me many nights of [lost] sleep.

8

9   Defendant Lilly Chan was erroneously sued as "Ms. Lee" and defendant James Firman was

10  erroneously sued as "Dr. Furmer."

11       **B.      The Parties' Evidence**

12               Defendants state that the following facts are undisputed:

13       1.      The clinical observations reported by defendant Chan (erroneously sued as
                 "Ms. Lee") and observations of plaintiff on August 20, 2010, were
14               consistent with the clinical observations recorded prior to plaintiff's
                 incarceration.

15
         2.      The records from plaintiff's medical treatment prior to incarceration
16               contain no recommendation for surgical intervention and are consistent
                 with the September 2010 opinions of defendant Douglass.

17
         3.      The care received by plaintiff at the Yolo County Jail complied with
18               applicable medical standards.

19  In support defendants offer the declarations of: (1) John Levin, M.D., an expert in emergency

20  medicine; (2) Jerome Varanini, Esq., defendants' counsel; and (3) Jodel Jencks, R.N., the

21  custodian of medical records at the Yolo County Jail.  The declarations of Varanini and Jencks

22  appear to be offered solely for the purpose of authenticating attached medical records and other

23  exhibits.

24  / / /

25  / / /

26  / / /

1    Plaintiff's medical records reflect that, upon arrival at the Yolo County Jail in
2 August 2010, he reported treatment for "torn shoulder" which resulted from a fight in 2009.  The
3 records also reflect that plaintiff sustained a broken index finger and "torn ligaments" in his right
4 knee in June 2010, and that he had been treated for these injuries prior to incarceration.  The
5 records also show that, upon arrival at the Yolo County Jail, plaintiff indicated that he had been
6 prescribed Vicodin and an anti-inflammatory.  Upon his arrival at the jail, plaintiff's vital signs
7 were recorded and plaintiff's name was placed on the "sick call" list to be seen by defendant
8 Chan (erroneously sued as "Ms. Lee") the next Friday, August 20, 2010.  Ibuprofin for pain relief
9 was ordered pending plaintiff's evaluation by defendant Chan.

10    The records reflect that plaintiff was examined by defendant Chan on August 20,
11 2010.  Chan took a complete history and plaintiff reported that doctors who treated him prior to
12 incarceration had recommended three surgeries: one each for the shoulder, knee, and finger.
13 Plaintiff also reported that Ibuprofin was not effective in relieving his pain symptoms and that
14 outside doctors had prescribed Vicodin.  Chan offered plaintiff a stronger pain medication –
15 Ultram – but plaintiff refused.  Plaintiff's medical records show that Chan's clinical observations
16 were inconsistent with plaintiff's reported limitations.  For example, as to plaintiff's knee, Chan
17 noted the absence of erythema and, as to the shoulder, Chan observed plaintiff resting his
18 shoulder on the desk "at an adducted angle" and she also observed plaintiff moving his arm
19 freely without difficulty or complaint.  Plaintiff was dissatisfied with Chan and threatened to file
20 a grievance.  In response, Chan contacted defendant Douglas, a physician, to examine plaintiff.

21    Plaintiff was examined by defendant Douglas on August 25, 2010.  At that time,
22 plaintiff again asked for Vicodin because his shoulder "sometimes pops" and his shoulder
23 "wobbles."  He told Douglas that he wanted surgery done while he was at the Yolo County Jail.
24 On examination, Douglass noted that plaintiff was able to rise, use his shoulder, legs, and right
25 arm without observable discomfort, and that he had a full range of motion.  Douglas did not see
26 any clinical evidence that plaintiff required pain medication.  After reviewing plaintiff's pre-

1  incarceration medical records covering the period from June 23, 2010, through August 13, 2010,

2  Douglas noted "scant evidence" to verify plaintiff's complaints.

3       On September 23, 2010, defendant Firman (erroneously sued as "Furmer")

4  reviewed plaintiff's pre-incarceration MRI and x-ray studies and noted a "tine" partial thickness

5  tear of the right shoulder, and that an index finger fracture had healed.  Defendant Firman

6  nonetheless ordered a trial of Ultram and acetominophen 650, both for 30 days, with a

7  medication review in 28 days.

8       On October 7, 2010, plaintiff was seen again by Douglas in response to plaintiff's

9  "sick call" request for hand surgery.  Douglas performed an examination which did not reveal

10  any clinical need for emergent referral for surgery.

11       Plaintiff was released from the Yolo County Jail but was later returned on January

12  20, 2011.  Plaintiff was again offered Ultram, but records reflect that he refused that medication

13  on January 23, 2011, January 24, 2011, and again on January 25, 2011.  Plaintiff was transferred

14  out of the Yolo County Jail on January 27, 2011.

15       In his declaration, Dr. Levin states that, based on his review of plaintiff's records,

16  he agrees with the assessments made by defendants in this case that, at the times plaintiff was

17  incarcerated at the Yolo County Jail, plaintiff ". . . did not have clinical signs or symptoms

18  compatible with a diagnosis of a torn rotator cuff, soft tissue right knee damage, and/or left index

19  finger damage that would have supported a referral for a surgical consultation."  Dr. Levin also

20  states that, in his opinion, the care provided to plaintiff at the Yolo County Jail ". . . met the

21  applicable standard of care. . . ."

22       In his opposition, plaintiff states:

23       YOLO county jails medical doctors, and n.p. Ms. Chan grossly
   violated Plaintiff's 8th Amendment rights by delaying and denying

24  adequate medical treatment to plaintiff.  Even a lay person would have
   sent plaintiff out to see an orthopedic specialist after reading the MIR that

25  described injuries that only surgery could repair.  Plaintiff rebuts any and
   all of defends [sic] arguments in his SUMMARY JUDGMENT. . . .

26

1  Plaintiff attaches to his opposition documents indicating that he ultimately had arthroscopic

2  surgery in October 2011 and that "right ACL and MCL repair" was recommended.

3

4  ## II.  STANDARDS FOR SUMMARY JUDGMENT

5  Summary judgment is appropriate when it is demonstrated that there exists "no

6  genuine issue as to any material fact and that the moving party is entitled to a judgment as a

7  matter of law."  Fed. R. Civ. P. 56(c).  Under summary judgment practice, the moving party

8  . . . always bears the initial responsibility of informing the district court of
   the basis for its motion, and identifying those portions of "the pleadings,
9  depositions, answers to interrogatories, and admissions on file, together
   with the affidavits, if any," which it believes demonstrate the absence of a
10  genuine issue of material fact.

11  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

12  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a

13  summary judgment motion may properly be made in reliance solely on the 'pleadings,

14  depositions, answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment

15  should be entered, after adequate time for discovery and upon motion, against a party who fails to

16  make a showing sufficient to establish the existence of an element essential to that party's case,

17  and on which that party will bear the burden of proof at trial.  Id. at 322.  "[A] complete failure of

18  proof concerning an essential element of the nonmoving party's case necessarily renders all other

19  facts immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as

20  whatever is before the district court demonstrates that the standard for entry of summary

21  judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

22  If the moving party meets its initial responsibility, the burden then shifts to the

23  opposing party to establish that a genuine issue as to any material fact actually does exist.  See

24  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

25  establish the existence of this factual dispute, the opposing party may not rely upon the

26  allegations or denials of its pleadings but is required to tender evidence of specific facts in the

5

form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  See Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

### III.  DISCUSSION

In their motion for summary judgment, defendants argue that, even assuming plaintiff had a serious medical need during the times he was incarcerated at the Yolo County Jail, there is no evidence of deliberate indifference.  Specifically, defendants contend that this case presents, at best, a claim based on a difference of medical opinion between the defendant medical providers and plaintiff which does not rise to the level of deliberate indifference.

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment.  See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994).  The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency."  Estelle v. Gamble, 429 U.S. 97, 102 (1976).  Conditions of confinement may, however, be harsh and restrictive.  See Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety."  Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986).  A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm.  See Farmer, 511 U.S. at 834.  Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind."  See id.

Deliberate indifference to a prisoner's serious illness or injury, or risks of serious injury or illness, gives rise to a claim under the Eighth Amendment.  See Estelle, 429 U.S. at 105; see also Farmer, 511 U.S. at 837.  This applies to physical as well as dental and mental health needs.  See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982).  An injury or illness is sufficiently serious if the failure to treat a prisoner's condition could result in further significant injury or the ". . . unnecessary and wanton infliction of pain."  McGuckin v. Smith, 974 F.2d

7

1050, 1059 (9th Cir. 1992); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994). Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily activities; and (3) whether the condition is chronic and accompanied by substantial pain.  See Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

The requirement of deliberate indifference is less stringent in medical needs cases than in other Eighth Amendment contexts because the responsibility to provide inmates with medical care does not generally conflict with competing penological concerns.  See McGuckin, 974 F.2d at 1060.  Thus, deference need not be given to the judgment of prison officials as to decisions concerning medical needs.  See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989).  The complete denial of medical attention may constitute deliberate indifference.  See Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986).  Delay in providing medical treatment, or interference with medical treatment, may also constitute deliberate indifference. See Lopez, 203 F.3d at 1131.  Where delay is alleged, however, the prisoner must also demonstrate that the delay led to further injury.  See McGuckin, 974 F.2d at 1060.

Negligence in diagnosing or treating a medical condition does not, however, give rise to a claim under the Eighth Amendment.  See Estelle, 429 U.S. at 106.  Moreover, a difference of opinion between the prisoner and medical providers concerning the appropriate course of treatment does not give rise to an Eighth Amendment claim.  See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

The court agrees with defendants that this case is based entirely on plaintiff's disagreement with the course of treatment prescribed by defendants.  The undisputed facts demonstrate that: (1) each defendant examined plaintiff in response to his complaints; (2) plaintiff was examined in a timely manner without any significant delay; (3) plaintiff was provided medication for pain relief; (4) defendant Chan responded to plaintiff's complaints and referred him to be seen by a doctor; (5) defendants Douglas and Firman examined plaintiff and

1  concluded that plaintiff did not require surgery; and (6) at all relevant times, plaintiff was

2  provided with medical care which comported with the applicable professional standards.

3  Clearly, on this record, there can be no dispute but that defendants were <u>not</u> deliberately

4  indifferent.  To the contrary, they very deliberately responded to plaintiff's complaints and

5  provided adequate treatment.

6          Plaintiff has offered no evidence to create a genuine dispute of fact on any

7  material issue.  Evidence offered by plaintiff showing that, following his incarceration at the

8  Yolo County Jail, he ultimately received surgery is not evidence that defendants were

9  deliberately indifferent to plaintiff's medical complaints at the time he was incarcerated.  While

10  defendants may have been incorrect in their assessments of the nature and severity of plaintiff's

11  injuries, they were not deliberately indifferent to any serious medical need.

12

13                    **IV.  CONCLUSION**

14          Based on the foregoing, the undersigned recommends that defendants' motion for

15  summary judgment (Doc. 42) be granted.

16          These findings and recommendations are submitted to the United States District

17  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days

18  after being served with these findings and recommendations, any party may file written

19  objections with the court.  Responses to objections shall be filed within 14 days after service of

20  objections.  Failure to file objections within the specified time may waive the right to appeal.

21  <u>See</u> <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

22

23   DATED:  February 13, 2013

24                                    _____
                                      **CRAIG M. KELLISON**
25                                    UNITED STATES MAGISTRATE JUDGE

26

                                      9